GENERAL MOTORS ACCEPTANCE CORPORATION *v.* NEW ORLEANS & G. N. R. R. Co. *et al.*

(Division A. Jan. 13, 1930.)

[125 So. 541. No. 28110.]

Powell, Harper & Jiggitts, of Jackson, and J. F. Guynes, of Hazelhurst, for appellant.

Green, Green & Potter, of Jackson, for appellee.

Argued orally by **A. Y. Harper**, for appellant, and by **Garner W. Green**, for appellee.

**Cook, J.**, delivered the opinion of the court.

The appellant, General Motors Acceptance Corporation, instituted this suit in the circuit court of the First district of Hinds county, against the appellees, New Orleans Great Northern Railroad Company and the Great Southern Lumber Company, seeking to recover from them as damages the balance due it on the purchase price of a Chevrolet automobile previously sold to one N. H. Hemby, and alleged to have been negligently destroyed by the appellees. The appellees filed a plea of the general issue, and a special plea setting up an alleged release of said railroad company from all liability for the destruction of said automobile. The appellant demurred to this special plea, and upon its demurrer being overruled, it declined to plead further, and thereupon a final judgment dismissing the suit was entered; and from this judgment this appeal is prosecuted.

The declaration alleged that the Auto Service Company sold to one N. H. Hemby a Chevrolet touring car for two hundred fifty-two dollars cash, and five hundred

four dollars payable in twelve monthly installments of forty-two dollars each, and that at the time of the sale a conditional sales contract was executed by and between the said Auto Service Company and the purchaser, Hemby, wherein the said Hemby agreed to pay the said amount of five hundred four dollars in monthly installments, and the title to the automobile was retained in the seller until the full payment of the said balance of the purchase price.

It was further alleged that the sales contract was, for a valuable consideration, transferred to the appellant, and that the said automobile was afterwards destroyed, and the said N. H. Hemby was killed, as a result of the joint negligence of the appellees; the detailed charges of negligence being set forth in the declaration.

It was further alleged that under the said conditional sales contract, which was made an exhibit to the declaration, the appellant had a lien on said automobile for the balance due thereon with an attorney's fee of seventy-five dollars as collection fees, and that having negligently destroyed the automobile which was the sole security for said indebtedness, the appellees had damaged the appellant to the extent of said indebtedness and were liable to it therefor.

The special plea filed by the appellees averred that at the time of the destruction of the automobile, the said N. H. Hemby was the owner thereof, subject only to a lien for the unpaid purchase price by reason of the sales contract executed by him; that the said Hemby had made no default in the payments due and owing and was then in possession of the automobile with the right to use and enjoy the same; that the said automobile was destroyed along with the use and possession thereof; and that the said railroad company settled with Ida Hemby for one thousand dollars and took from her a release under and by virtue of which the said railroad company was acquitted and discharged of all liability for damages to both person and property in consequence

of the said accident. A copy of the alleged release was filed as an exhibit to the plea, and is in the following words and figures, to-wit:

"New Orleans Great Northern Railroad Company,
"Receipt and Acquittance.
"Hopewell, Miss., August 13, 1927.

"Received of New Orleans Great Northern Railroad Company, the sum of one thousand dollars in full settlement and satisfaction of all claims and demand of every kind and character whatsoever accrued or hereafter to accrue to me on account of fatal injury to my husband, Needham Hemby, on July 25, 1927. Needham was driving a Chevrolet touring car, and while endeavoring to cross the railroad track, at crossing North of Georgetown depot, was struck by N. O. G. N. train No. 170 and received personal injuries, which resulted in his death at the Baptist Hospital, Jackson, Miss., a few days later.

"Needham was never married before, and as there were no children born to our union, I am his sole heir.

"And, for said consideration, I, for myself, my heirs, legal representatives and assigns, do hereby release, acquit, and forever discharge the New Orleans Great Northern Railroad Company, its successors and assigns, of and from all claims, demands, damages, judgments, causes of action, at law or in equity, and from any matter or thing whatsoever accrued or hereafter to accrue, including damage on account of personal injuries and all other damages to my person or property in consequence to the above-described occurrence.

"And for said consideration and for the parties herein mentioned, it is agreed that no suits of any kind or character shall be instituted for a recovery of any sort growing out of said injury or injuries.

"And, to secure said settlement, I hereby acknowledge that said sum of money was and is the sole consideration for this release; that no promises or representations have been made to me as an inducement to

make said settlement; and that said settlement satisfied me in full in all respects and is complete and final.

"Witness my signature, this the 13th day of August, A. D. 1927.

her

"[Signed] IDA X HEMBY."

name

This release is pleaded in bar of the action, and no question is raised as to the right of the lien creditor to maintain the suit in his own name, provided it is held that the liability for damages to the property upon which the lien attached was not discharged by the release executed by the widow of the deceased.

In the cases of Scott v. Southern Railroad Co. (Miss.), 47 So. 531, Kimball v. L. & N. R. R. Co., 94 Miss. 396, 48 So. 230, 231, and Home Insurance Co. v. Tate Mercantile Co., 117 Miss. 760, 78 So. 709, 711, it was held that when a person sustains injuries to both his person and his property by the same tortious act, but one cause of action is given. In the case of Loeb v. Chicago Railroad Co., 60 Miss. 933, it was held that a recovery by a mortgagor in possession for damages to the mortgaged property was a bar to any recovery by the mortgagee, while in the case of Murphy v. American Soda Fountain Co., 86 Miss. 797, 39 So. 100, it was held that a recovery by the purchaser under a conditional sales contract for damages to the property so purchased came within the principle announced in the case of Loeb v. Railroad Co., supra. The appellee relies upon the above-mentioned cases, and that line of cases including Bankston v. Hill, 134 Miss. 288, 98 So. 689, 37 A. L. R. 88; Rodgers v. Whitehead et al., 127 Miss. 21, 89 So. 779; Hunter v. Crook, 93 Miss. 812, 47 So. 430; Foundry Co. v. Pascagoula Ice Co., 72 Miss. 608, 18 So. 364; Tufts v. Stone, 70 Miss. 54, 11 So. 792; Dederick v. Wolfe, 68 Miss. 500, 9 So. 350, 24 Am. St. Rep. 283, holding that a reservation of title by the seller of personal property is only as security for the purchase price, and if the

property is recovered by the seller, he must deal with it as security and without regard to the equal rights of the purchaser. For the purpose of this decision, it may be conceded that under the doctrine announced in these cases, a recovery or a settlement by Hemby during his lifetime would have barred an action by the seller for damages to the property covered by the conditional sales contract. The question presented by this record, however, is whether or not a separate cause of action arises where, from the same tortious act, a person sustains personal injuries from which death results, and also sustains damage to his property; that is to say, one cause of action for the personal injuries and death, and another and separate cause of action for the damages to the property of the decedent.

Under section 721, Code of 1906, as amended by chapter 229, Laws of 1922, section 515, Hemingway's 1927 Code, among other heirs who are given the right to sue for and recover damages for the death of a person who has been killed by the negligent act or omission of another, the widow of such deceased person is expressly given the right to maintain the suit and recover such damages, and in such case only one suit may be brought for the death, and the party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit. By this statute it is further provided that the damages recovered under the provisions thereof shall not be subject to the payment of the debts or liabilities of the deceased, and that all damages recovered for the injury and death of a married man who has no children shall go to his wife. In the case at bar the deceased left no children surviving him, and therefore, by virtue of the provisions of this statute, the widow of the deceased had the right to sue for and recover the damages for the death of her husband, or to compromise and settle her claim for such

damages, and was entitled to receive such damages free of all liability for the payment of the debts or obligations of the deceased, and the release executed by her to the appellee railroad company discharged both the appellees from all further liability for the death of her husband. It is by virtue of this statute that the named heirs are given the right to maintain a suit in their own names for the damages resulting from death caused by the negligent act of another, and that such heirs are entitled to receive the recovery for such death free of all liability for the debts of the deceased.

Section 1651, Code of 1906, section 1450, Hemingway's 1927 Code, provides that, "if a husband die intestate, and do not leave children or descendants of children, his widow shall be entitled to his entire estate, real and personal, in fee-simple, after payment of his debts," and in the case of Maxwell, Adm'r, v. Craft, 32 Miss. 307, it was held that, "upon the dying of any person, intestate, the legal title to his chattels personal vests in his administrator, first for the payment of debts, and then for distribution." Again in the case of Andrews, Administrator, v. Brumfield et al., 32 Miss. 107, it was held that "the legal title to a decedent's property is vested in the administrator for certain special purposes —for collecting and preserving the assets, paying the debts, and for distribution." In the case of Ricks v. Hilliard, Administrator, 45 Miss. 359, the court said that if there be no valid enforceable claims outstanding in favor of creditors, the heir or distributee, without administration, may .sue for and recover the personal effects of the deceased.

There is no statute authorizing the heirs or the distributees of the decedent to maintain a suit to recover damages for injury to, or destruction of, personal property of the decedent resulting from the tortious act of another during the lifetime of the decedent and for which such decedent might have maintained a suit if he had lived; and in the case of Jones v. Clemmer & Son,

98 Miss. 508, 54 So. 4, 5, the court said that, "It is undoubtedly the general rule that a distributee cannot sue, either at law or equity, to recover the personal estate of the decedent," and further stated the reason of the rule to be that: "The legal title goes to such legal representative for the purpose of paying debts, legacies, and making distribution, and the interest alone of the distributees is in what remains after payment of the debts." However, in the Jones case, supra, the court recognized, as a well-established exception to this general rule, cases in which there were no valid outstanding debts against the estate and no administration. By section 2091, Code 1906, section 1834, Hemingway's 1927 Code, the widow of an intestate who left no children and authority to commence and prosecute any personal action whatever, at law or in equity, which the intestate might have commenced and prosecuted, and under section 1651, Code 1906, section 1450, Hemingway's 1927 Code, the widow of an intestate who left no children or descendants of children is entitled to his estate only after the payment of debts; and since upon the death of such intestate the legal title to his property is vested in his administrator for the purpose of collecting and preserving the assets and paying the debts, we think a suit for damages to the personal property of the decedent resulting from the tortious act done during the lifetime of decedent can only be maintained by the administrator when there are debts owing by the decedent.

In the case of McVay v. Castenara, 152 Miss. 106, 119 So. 155, 156, the court said that: "The rule applying to splitting a cause of action is one of practice merely, and is not without exception." And since in our opinion the effect of the statute law of the state is to vest in the administrator the sole right to maintain an action for damages to the personal property of a decedent, while the widow and other named heirs are only given the right to sue for the death and recover the damages to the decedent and the damages to the interested heirs or

distributees, we think that only the administrator can compromise and settle a claim for such damages to the property of the decedent when there are valid outstanding debts against the estate. In the case at bar, there were debts outstanding, the appellant being a lien creditor, and by section 2024, Code 1906, section 1764, Hemingway's 1927 Code, the court may, after thirty days from the death of an intestate, grant administration to a creditor if none of the relatives entitled by that section to letters of administration have applied therefor. From the views herein expressed, it follows that the demurrer to the special plea should have been sustained, and therefore the judgment of the court below will be reversed and the cause remanded.

Reversed and remanded.